UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSE MENDEZ,

                                   Petitioner,

**No. 1:15-cv-00009-MAT**
**DECISION AND ORDER**

        -vs-

MICHAEL SHEEHAN,

                                   Respondent.

---

**I.  Introduction**

Jose Mendez ("Petitioner"), proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being detained in Respondent's custody as the result of an unconstitutional conviction entered against him on November 30, 2006, in State of New York, County Court, County of Monroe (King, J.). As discussed further herein, Petitioner has not demonstrated entitlement to a writ of habeas corpus, and his petition is dismissed.

**II.  Factual Background and Procedural History**

On May 20, 2006, at about 6:45 p.m., Petitioner and two acquaintances (Roberto A. Astacio ("Astacio") and Maximillan T. Garrison ("Garrison")) broke into the Rochester, New York home of Anthony Manella ("Manella"), a 59-year-old painting contractor. Manella also managed and trained boxers, and he had been training Petitioner for about 2 or 3 months prior to the incident. Wearing

masks and carrying fake guns, Petitioner and his cohorts tied up Manella's daughter and stole money from her and Manella's wife. Astacio pistol-whipped Manella several times across the left side of his head while demanding money and gem stones from him.

At some point, Manella's daughter was able to yell out to her boyfriend, who was standing outside smoking a cigarette, that there were men inside the house with guns. The boyfriend called 911, and, shortly after 7 p.m., members of the Rochester Police Department surrounded the house. Manella and his wife escaped down the back staircase to the second floor where they untied their daughter.

Astacio surrendered immediately to police. Approximately one hour later, Petitioner left the house with his hands up. The police eventually found Garrison hiding in a crawl space in the third-floor bedroom and had to break down the wall to extract him.

Manella was taken to the hospital where doctors determined he had sustained multiple fractures on the left side of his face as well as permanent loss of vision in his left eye due to blunt force trauma to the optic nerve.

Petitioner was taken into custody and, after being advised of his <u>Miranda</u> rights, he told the police that it was his idea to go to Manella's house to steal marijuana from him. Approximately three hours later, Petitioner gave a written statement in which he admitted that he knew Manella, knew that Manella had marijuana in his house, and that he had gone to Manella's house with Garrison

and Astacio to steal marijuana. Petitioner stated that apart from telling Manella's wife that he wanted their "weed," he took no part in the crime and hid in the basement until he left the house.

The police recovered masks, a BB gun replica of a Smith & Wesson automatic handgun, a hard plastic replica of a Baretta 92 model 9 millimeter pistol, a knife, body armor, and several pieces of clothing at Manella's residence after the incident. However, no fingerprints were recovered from the weapons, and no forensic testing was conducted on any of these items.

Severance was granted as to all defendants. On October 25, 2006, following a jury trial, Petitioner was convicted of one count each of first-degree burglary and second-degree assault, and four counts of second-degree robbery. On November 30, 2006, the County Court adjudicated Petitioner a second felony offender and sentenced him to the following concurrent determinate prison terms: 20 years on both of the first-degree burglary and first-degree assault convictions, and 15 years on each of the four second-degree robbery convictions. The County Court also imposed a five-year term of post-release supervision.

Through appellate counsel, Petitioner appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. Petitioner also filed a pro se supplemental brief. The Appellate Division unanimously affirmed the judgment on October 1, 2010. People v. Mendez, 77 A.D.3d 1312 (4th Dep't 2010).

The New York Court of Appeals denied leave to appeal on February 24, 2011. People v. Mendez, 16 N.Y.3d 799 (2011).

On April 20, 2012, Petitioner filed a pro se motion to vacate the conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in the County Court. Citing then-recent Supreme Court cases, Missouri v. Frye, 132 S. Ct. 1399 (2012) ("Frye"), and Lafler v. Cooper, 132 S. Ct. 1376 (2012) ("Lafler), Petitioner asserted that he received ineffective assistance of counsel during plea negotiations. On July 10, 2014, the County Court (Piampiano, J.)[1] issued a Decision and Order (SR.340-45) denying the motion without a hearing, finding that it could be decided on the trial record. On November 30, 2014, the Appellate Division denied leave to appeal. (SR.426).

In his timely-filed habeas petition, Petitioner claims that he was denied effective assistance of trial counsel (1) during the plea negotiations because his attorney failed to inform him that his lack of intent to injure Manella was not a defense to the burglary charge; and (2) at trial, because (a) counsel erroneously raised a defense that Petitioner lacked intent to commit first-degree burglary and (b) counsel failed to move to suppress Petitioner's written statements on the ground that they were obtained without Petitioner being advised of his Miranda rights;

---

[1] Since the time of Petitioner's trial, Judge King had retired. Judge Piampiano was assigned to handle Petitioner's C.P.L. § 440.10 motion.

(3) the trial court erroneously denied Petitioner's motion for a mistrial after a police officer used the term "home invasion" during his testimony despite the trial court ruling precluding the use of that term; and (4) Petitioner was denied due process when the trial court arbitrarily refused to hold a hearing on the C.P.L. § 440.10 motion. (Petition [#1], ¶ 12).

In his answer, Respondent argues that the claims are unexhausted, procedurally defaulted, or not cognizable on habeas review and, in any event, are without merit. Petitioner filed a reply but did not address Respondent's procedural defenses. For the reasons set forth below, the petition is dismissed.

**IV. Discussion**

    **A.   Ineffective Assistance of Trial Counsel (Grounds One and Two)**

        **1.   Ineffectiveness During Plea Negotiations (Ground One)**

At trial, defense counsel argued that Petitioner's only intent was to take an illegal substance (marijuana) from Manella, not to injure him or steal money or jewels from him. Petitioner characterizes this defense as a "sham" and faults trial counsel for misrepresenting the merits of such a defense. According to Petitioner, if he had been properly counseled, he would have accepted the prosecution's purported offer to plead guilty in exchange for a determinate sentence of 10 years.

The Sixth Amendment entitled Petitioner to the effective assistance of counsel during plea negotiations. Frye, 566 U.S. at 140 (citations omitted). While defendants have "no right to be offered a plea[,]" id. at 148 (citation omitted), "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Id. at 145. Relatedly, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 566 U.S. at 168. However, "[i]f no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue [of whether the defendant received effective assistance in this context] does not arise." Id.

In his C.P.L. § 440.10 motion, Petitioner claimed that he would have accepted the prosecution's offer of a sentence promise of 10 years if he pled guilty to the entire indictment, if counsel had advised him that a lack of mens rea as to the first-degree burglary count was not a defense under a theory of accomplice liability. (See SR.354-62). In opposing the motion, the prosecution acknowledged that a plea bargain had been discussed with Petitioner, but asserted an offer was not extended because Petitioner would not agree to plead guilty to the entire indictment. (See SR.331-39).

The key issue, as the County Court found, was whether there actually was a plea offer of 10 years extended by the prosecution. The County Court found that defense counsel's remarks at sentencing, arguing in favor of a 10-year sentence, did not support Petitioner's claim. (SR.344-45). Specifically, at sentencing, trial counsel noted that

> [e]ven at the point of jury selection, Your Honor, we were *discussing 10 years*. I'd ask the Court to remember that even when we were discussing that, *the People continued to insist upon a plea to the entire indictment*, including one count that once *we had informed the Court we could not accept that*, they withdrew and dismissed one count in regards to Mr. Mannella.

(Id.) (emphases supplied). The County Court found these remarks by trial counsel fatally undercut Petitioner's assertion that the prosecution had actually offered a plea offer with a sentence promise of 10 years.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, [28 U.S.C.] § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, [id., § 2254(d)(2)[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citation omitted). The Court need not determine whether § 2254(e)(1)'s or § 2254(d)(2)'s standard applies, because the result is the same in either case. Petitioner has not come forward

-7-

with "clear and convincing" proof sufficient to rebut § 2254(e)(1)'s presumption. To the extent the County Court's decision was based on a factual determination, it certainly was not objectively unreasonable given the factual record below, see 28 U.S.C. § 2254(d)(2).

### 2. Ineffectiveness at Suppression Hearing and Trial (Ground Two)

#### a. Failure to Move to Suppress Petitioner's Statements

Petitioner faults trial counsel for failing to move to suppress his written statements on the ground that they were obtained without Petitioner being re-advised of his Miranda rights. Respondent raises the defenses of non-exhaustion and procedural default, and alternatively argues that the claim is meritless.

"Each substantially independent factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it." Jelinek v. Costello, 247 F. Supp.2d 212, 267 (E.D.N.Y. 2003) (citing Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991)). As Respondent points out, Petitioner has never fairly presented this claim in Federal constitutional terms to the State courts in the course of completing one round of the State's established appellate review process, thereby rendering these claims unexhausted. See Baldwin v. Reese, 541 U.S. 27, 29 (2004).

However, Petitioner is procedurally barred from returning to state court to exhaust this claim of ineffective assistance of trial counsel. First, he has already completed his direct appeal. By statute, New York law used to specifically provide for only a single application for direct review. Spence v. Sup't, Great Meadow Corr. Fac., 219 F.3d 162, 170 (2d Cir.2000) (relying on former New York Rules for the Court of Appeals ("N.Y. R. Ct.") § 500.10(a) (discussing leave applications for criminal appeals)). N.Y. R. Ct. § 500.10 has since been amended, and criminal leave applications are now addressed in N.Y. R. Ct. § 500.20. Although § 500.20 "does not specifically state that there may be only one application for appeal, see N.Y. R. Ct. § 500.20, such a restriction may be inferred," since "[b]oth Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted." Colon v. Connell, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n. 4 (S.D.N.Y. July 9, 2009) (noting that both N.Y. R. Ct. § 500.20(d) and N.Y. Crim. Proc. Law § 460.10(5) provide a 30-day window for any such application to be filed; "this time limit would be meaningless were multiple applications permitted"); accord, e.g., Cunningham v. Conway, 717 F. Supp.2d 339, 365 (W.D.N.Y. 2010) (collecting cases). In addition, § 500.20(a)(2) provides that the leave letter must indicate that "that no application for the same relief has been addressed to a justice of the Appellate Division,

as only one application is available[.]" N.Y. R. CT. § 500.20(a)(2).

Collateral review in state court of this ineffective assistance claim is likewise barred because "sufficient facts appear on the record of the proceedings underlying the judgment" to have permitted Petitioner to raise the claim on direct appeal. See N.Y. Crim. Proc. Law § 440.10(2)(c) (mandating that court dismiss motion to vacate if sufficient facts appeared on the record to have permitted direct review but defendant unjustifiably failed to raise claim on direct appeal).

Because a state court would find Petitioner's unexhausted ineffective assistance claim to procedurally barred from review, they are deemed exhausted. Grey v. Hoke, 933 F.2d 117, 120–21 (2d Cir. 1991). However, the state's barriers to relief that cause the Court to deem Petitioner's claim exhausted also renders it procedurally defaulted. E.g., Ramirez v. Att'y Gen'l of N.Y., 280 F.3d 87, 94 (2d Cir. 2001) (citation omitted).

A procedural default may be excused by a federal court, however, if the petitioner demonstrates either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A miscarriage of justice on occurs "in an extraordinary case, where a constitutional violation has probably

-10-

resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). Petitioner has not made a showing of cause and prejudice, or that he is actually innocent.

Indeed, prejudice is lacking because the underlying Miranda argument is without merit, as the Appellate Division determined on direct appeal. That court found that Petitioner was administered, and waived, his Miranda rights at approximately 9:30 p.m. Subsequently, he "remained in police custody, and there is no evidence in the record before us that he invoked his right to counsel or had reason to believe that he was no longer under investigation." Mendez, 77 A.D.3d at 1312. When the police questioned him approximately three hours later, without readministering Miranda warnings, he gave the written statement at issue. The Appellate Division concluded, that under the facts of this case, "there was no need for the police to readminister [his] Miranda rights and thus . . . the [trial] court properly refused to suppress [his] written statement[.] Id. (citation omitted). Given that both the trial court and the appellate court rejected the argument that Petitioner contends trial counsel should have made at the suppression hearing, Petitioner cannot show that he was prejudiced by trial counsel's failure to do so.

### b. Assertion of a "Sham" Defense

Petitioner claims that trial counsel was ineffective for raising a defense that he lacked the intent to commit burglary

-11-

because he did not intend to injure Mannella or rob Mannella's wife and daughter. Specifically, during summation, trial counsel argued that Petitioner intended only to steal Manella's stash of marijuana and did not share his co-defendants' intention of robbing and assaulting Mannella, and forcibly taking property from Mannella's wife and daughter. (T.410-12). Petitioner asserts that this argument was a "sham" because it was not a complete defense to any of the charges against him. The Appellate Division rejected this contention, inasmuch as Petitioner "failed to show the absence of a strategic explanation for defense counsel's alleged shortcomings[.]" Mendez, 77 A.D.3d at 1312-13 (citations omitted). This holding was not erroneous as a matter of federal law.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court observed that since "there are countless ways to provide effective assistance in a given case," "even the best criminal defense attorneys would not defend the particular client the same way." Id. at 689. "Determinations regarding the defense strategy adopted at trial are among the 'virtually unchallengeable' tactical decisions left to the judgment of trial counsel." Swail v. Hunt, 742 F. Supp.2d 352, 365 (W.D.N.Y. 2010) (citing United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991); United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987)).

Here, Petitioner was charged with first-degree burglary under N.Y. Penal Law § 140.30(2), which provides that "[a] person is

guilty of burglary in the first degree when he [1] knowingly enters or remains unlawfully in a dwelling [2] with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime: . . . [3] [c]auses physical injury to any person who is not a participant in the crime[.]" N.Y. Penal Law § 140.30(2). Here, the prosecution's proof as to the three elements was overwhelming.

As to the first and second elements, Petitioner admitted to the police that it was his idea to steal marijuana from Mannella. In his written statement, which was read to the jury, Petitioner stated in part as follows:

> Today 5/20/06, I was with two guys that I know. I drove my blue Mazda Protege to Virginia Avenue and parked. I know a guy named Tony who lives at Post Avenue. Tony used to. train me in boxing. Tony usually has marijuana in his house. I was going to Tony's house with these two guys to take his marijuana. We all went in his house and went upstairs to the attic area. Tony was upstairs with his wife. I told Tony I want the weed, where is the weed. Tony's wife was afraid, so she went and got the weed. It was like half a Ziploc bag. . . ."

(T.387; SR.103). Petitioner thus admitted that he "knowingly entered" Mannella's home "unlawfully" with the "intent to commit a crime therein." As to the third element, there is no dispute that Mannella's permanent loss of vision constituted physical injury.

Given Petitioner's confession, trial counsel did not have much choice in the way of defenses to raise. He reasonably relied on the

remainder of Petitioner's statement[2] to put forth an appeal to the jury's sympathy, i.e., unlike his co-perpetrators, Petitioner did not intend to cause injury to the Mannella's and he only wanted marijuana. Granted, this was not a legal defense to the charges, but trial counsel had no other viable defense to raise, and Petitioner suggests no alternative. Petitioner has not established deficient performance by trial counsel, or that there was a reasonable probability of a different result if trial counsel had not made the argument regarding Petitioner's lack of intent.

### B. Erroneous Denial of Mistrial Motion (Ground Three)

Petitioner contends that the trial court erroneously denied his motion for a mistrial after a police officer used the term "home invasion" during his testimony.

At the beginning of trial, the prosecutor sought permission to refer to the crime as a "home invasion," arguing that it was a "factual description" of what had occurred. (T.201). The trial court denied the application, ruling that the issue was a "factual question of what occurred" and that the use of "home invasion" carried an implication. (T.201-03). However, one of the police officers testified that on the date of the crime, he was directed

---

[2] After demanding the marijuana from Manella, Petitioner stated, "I heard a noise downstairs, so I ran downstairs. Tony's daughter had a phone, so I took it from her. I heard some commotion upstairs, so I ran downstairs to the basement because I was scared. I stayed in the basement after I saw the cops were there. The cops exchanged words with one of the guys in the house who eventually went outside. I heard the police identifying themselves on a loud speaker, so I went outside." (T.387; SR.103).

-14-

to report to the Mannella home because other officers were working on a "home invasion robbery." (T.257). Trial counsel moved for a mistrial, which was denied (T.258). Instead, the trial court issued a instruction in which it explained that whether the case involved a "home invasion" was an issue for the jury to decide. (T.258).

Petitioner asserted the mistrial claim on direct appeal by framing it as an error of New York state evidentiary law. The Appellate Division found that the trial court "properly denied" the motion for a mistrial "based on the single use by a police officer of the term 'home invasion' during his trial testimony, despite the fact that the court had ruled that the term would be inadmissible." Mendez, 77 A.D.3d at 1312.

Respondent correctly argues that this claim is unexhausted because it was not fairly presented to the state courts as a federal constitutional claim. See, e.g., Duncan v. Henry, 513 U.S. at 365-66 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). Because the claim was not fairly presented to the state courts on Petitioner's direct appeal and, pursuant to N.Y.Crim. Proc. Law § 440.10(2)(c), he cannot now raise the claim in state court, it claim must be deemed exhausted but procedurally defaulted.

Petitioner has not attempted to excuse the procedural default by showing cause and prejudice, or that a fundamental miscarriage of justice would occur if this Court declines to consider the claim. The Court notes that cause prejudice, in particular, is lacking here. As the Appellate Division correctly held, the mistrial motion concerned a single instance of improper testimony, the trial court properly and promptly instructed the jury, which is presumed to follow instructions given to it. See, e.g., Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (jury is presumed to "follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant") (citations omitted). The police officer's single mention of the term "home invasion" "was not so damaging as to warrant a departure from this presumption[,]" United States v. Castano, 999 F.2d 615, 618 (2d Cir. 1993), given that "[t]he government's case against [Petitioner] was overwhelming[,]" id., as discussed above. See also, e.g., United States v. Minicone, 960 F.2d 1099, 1109 (2d Cir. 1992) (three inadvertent references to uncharged crimes constituted harmless error when court struck them from record and instructed jury to disregard them).

### C. Failure to Hold Hearing on C.P.L. § 440.10 Motion (Ground Four)

Petitioner argues that he was denied due process because the trial court refused to hold a hearing on his C.P.L. § 440.10 motion. Respondent argues that this claim is unexhausted because Petitioner did not raise it in support of his leave application seeking permission to appeal the denial of the C.P.L. § 440.10 motion to the Appellate Division. In any event, Respondent argues, this claim is not cognizable on habeas review. The Court agrees that Petitioner's claim is not cognizable on habeas review and therefore need not reach the exhaustion argument.

"[F]ederal law does not require states to provide a post-conviction mechanism for seeking relief." Word v. Lord, 648 F.3d 129, 132 (2d Cir. 2011) (per curiam) (citations omitted). The Second Circuit, in Word, joined with majority of its sister circuits that "have accordingly concluded that errors in state post-conviction proceedings do not provide a basis for redress under § 2254." Id. (collecting cases). Petitioner's claim thus is precluded by clear Second Circuit precedent. See id.; see also, e.g., Jones v. Duncan, 162 F. Supp.2d 204, 219 (S.D.N.Y. 2001) (habeas petitioner's assertion that the state court's failure to hold a hearing on his C.P.L. §§ 440.10 and 330.30 newly discovered evidence motions violated due process is not cognizable on federal habeas review) (citation omitted).

## V. Conclusion

For the foregoing reasons, Petitioner's request for a writ of habeas corpus is denied, and the petition (Dkt #1) is dismissed. Because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca
_____
HON. MICHAEL A. TELESCA
United States District Judge

DATED:   October 30, 2017
         Rochester, New York